**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sharon Melsky Kealoha,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-22-01393-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Sharon M. Kealoha's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Plaintiff filed a Complaint, (Doc. 1), and an Opening Brief, (Doc. 10), seeking judicial review of that denial. Defendant SSA filed an Answering Brief, (Doc. 11), to which Plaintiff replied, (Doc. 12). After reviewing the parties' briefs, the Administrative Record, (Doc. 9), and the Administrative Law Judge's ("ALJ's") decision, (Doc. 9-3 at 15-33), the Court will affirm the ALJ's decision for the reasons addressed herein.

**I.     BACKGROUND**

Plaintiff filed an Application for SSDI benefits in September 2019, alleging disability beginning in January 2019. (Doc. 9-3 at 15.) Plaintiff's claim was initially denied in March 2020. (*Id.*) After reconsideration, Plaintiff's claim was again denied on

August 11, 2020. (*Id.*) A hearing was held before ALJ Patricia Bucci on April 26, 2021. (*Id.*) After considering the medical evidence and opinions, the ALJ determined that Plaintiff suffered from severe impairments including multilevel degenerative disc disease, depressive disorder, anxiety disorder, cyclothymic disorder, breast cancer in remission, and obesity. (*Id.* at 19.) However, the ALJ concluded that, despite these impairments, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b). (*Id.* at 23.) In light of this, the ALJ concluded that Plaintiff is not disabled under sections 216(j) and 223(d) of the Act. (*Id.* at 32.) Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision—making it the final decision of the SSA Commissioner (the "Commissioner")—and this appeal followed. (Doc. 10 at 2.)

## I. LEGAL STANDARDS

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 47, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## II. DISCUSSION

Plaintiff argues that the ALJ committed harmful error in evaluating Plaintiff's symptom testimony and in weighing the medical opinion evidence. (Doc. 10.) The Court has reviewed the medical and administrative records and agrees with the Commissioner for the following reasons.

**A. Plaintiff's Symptom Testimony**

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040).

Plaintiff argues the ALJ committed materially harmful error by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record. (Doc. 10 at 16.) Plaintiff further argues that the ALJ did not link medical record characterizations with specific alleged inconsistencies within Plaintiff's symptom testimony. (*Id.* at 17.) The Commissioner argues the ALJ reasonably evaluated the medical opinions of Plaintiff's treatment providers and identified substantial evidence in support of her findings. (Doc. 11 at 12–18.) The Commissioner further argues that the ALJ gave valid reasons for discounting Plaintiff symptom testimony—including

that her conservative treatment was incompatible with her allegations, her limited mental health treatment did not comport with the severity of her allegations, her psychiatric examinations undermined her allegations of debilitating impairment, and her work and activities during the relevant period were inconsistent with her allegations. (*Id.*)

Here, Plaintiff alleges that she was successfully treated for breast cancer and that her cancer was in remission. (Doc. 10 at 19.) As a result of her surgeries and treatment, Plaintiff alleges that she still suffers residual symptoms and limitations, "including upper and lower extremity neuropathy, itching, fatigue, and cognitive decline." (*Id.* at 3.) However, Plaintiff's doctor indicated she was "able to carry on all pre-disease activities without restrictions" and treat her symptoms with conservative measures such as exercise, acupuncture, and ibuprofen. (Doc. 9-9 at 170; Doc. 9-20 at 27, 38.) The ALJ also noted that Plaintiff's alleged back pain limitations were inconsistent with the record as she walked with a normal gait and coordination, had intact strength and sensation in the upper and lower extremities, could walk on her toes and heels and squat, and treated her back pain conservatively with over-the-counter medication such as ibuprofen. (Doc. 9-3 at 103; Doc. 9-9 at 85; Doc. 9-21 at 84.)

Next, the ALJ discounted Plaintiff's allegations of mental impairment as she was already taking medication for her depression and anxiety and was not participating in therapy or any other mental health treatment. (Doc. 9-3 at 25.) The ALJ also discounted Plaintiff's allegations for mental impairment based on the Dr. Ramio Guillen's findings which showed Plaintiff was cooperative, showed intact memory, normal attention, and normal concentration. (*Id.* at 28–29; Doc. 9-22 at 121, 125, 129, 134, 139.) Finally, the ALJ found Plaintiff's symptom testimony limiting her capacity to work unpersuasive on the basis that she worked as a registered nurse after the alleged onset date, was able to go on a cruise in the South Caribbean (Doc. 9-3 at 26; Doc. 9-21 at 86), go SCUBA diving (Doc. 9-3 at 26; Doc. 9-18 at 31), and travel to Tahiti (Doc. 9-3 at 26; Doc. 9-22 at 128).

The Court finds that the ALJ gave specific reasons for finding Plaintiff's testimony not credible. These specific reasons include Plaintiff's conservative treatment of her

symptoms, her psychiatric examinations undermining her allegations of debilitating mental impairments, and her work and other activities being inconsistent with her claimed limitations. (Doc. 11 at 6–10); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). Although Plaintiff may disagree with how the ALJ interpreted the record and her subjective symptom characterization, the ALJ offered sufficient reasoning to discount her testimony.

Therefore, the Court finds the ALJ did not commit materially harmful error by rejecting Plaintiff's symptom testimony.

### B. Evaluation of Medical Testimony

An ALJ "must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ accords "controlling weight" to a treating doctor's medical opinion so long as it is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(c)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). If the opinion is not accorded controlling weight, then the ALJ looks to several other factors to determine how much weight it should have, including evidence supporting the treating doctor's opinion and the consistency of the opinion. *Id.* "[A]n ALJ may disregard a medical opinion that is brief, conclusory, and inadequately supported by clinical findings." *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."

*Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Claims filed on or after March 27, 2017, are subject to amended regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluations of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). Here, Plaintiff filed her claim in September 2019, therefore these new regulations apply. In applying these new regulations, the Ninth Circuit held that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)(2)) (internal citation omitted). Supportability refers to the extent to which a "medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence'" while consistency refers to the "extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520(c)(1)–(2)).

Plaintiff argues that the ALJ improperly rejected the medical opinions of Joanne Schlesinger, NP, Maqbool Halepota, M.D., and Gordon L. Grado., M.D. (Doc. 10 at 10–16.) The Commissioner argues that substantial evidence supports the ALJ's findings with respect to these medical opinions. (Doc. 11 at 13–17.) For the following reasons, the Court agrees with the Commissioner.

First, Nurse Schlesinger assessed Plaintiff's physical capacities on January 14, 2021. (Doc. 10 at 7.) During this assessment, she filled out a form consisting of checked boxes showing that Plaintiff indicated symptoms of neuropathy, body aches and joint pain, cognitive decline, and memory loss. (Doc. 9-19 at 243–46.) The form also described Plaintiff's limitations, including that she would be absent more than four days per month if she went to work. (*Id.* at 246.) Lastly, the form indicated that Plaintiff has been treated for breast cancer, which is now in remission, with chemotherapy, radiation, and a bilateral

mastectomy. (*Id.* at 243.)

In finding Nurse Schlesinger's opinion unpersuasive, the ALJ stated that her opinion consisted of checking boxes off a form, provided minimal explanation, and was inconsistent with the overall record. (Doc. 9-3 at 28.) Contrary to Plaintiff's argument, the ALJ did not discount the treatment source assessment merely based on a lack of narrative explanation. (*See* Doc. 10 at 13.) Rather, the ALJ's opinion found the combination of a form mostly consisting of checked boxes with minimal explanation for the extreme limitations recommended *combined* with the finding that this opinion was inconsistent with the record unconvincing. These findings combined makes the ALJ's finding acceptable. In particular, the ALJ noted medical records, work activity, and travel that conflicted with Nurse Joanne Schlesinger's conclusions regarding the extent of Plaintiff's limitations. (Doc. 9-3 at 26.)

In short, the ALJ's analysis addressed both the supportability and consistency of the opinion. Nurse Schlesinger's opinion was brief and did little to explain "the 'relevant . . . objective medical evidence[.]'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)(2)). Further, Nurse Schlesinger's opinion conflicted with Plaintiff's other treatment records and the record as a whole. In sum, the ALJ set forth specific and legitimate reasons for rejecting this medical opinion. Accordingly, substantial evidence supported the ALJ's decision to assign limited weight to Nurse Schlesinger's opinion.

Second, Dr. Grado provided an opinion pertaining to Plaintiff's limitations. His opinion stated that Plaintiff reported subjective complaints including forgetfulness, fatigue, depression, itching, joint pain, and difficulty working at her past job on a full-time basis. (Doc. 9-19 at 145.) Additionally, Dr. Grado's opinion consisted of a form with minimal explanation. (Doc 9-21 at 2–5.) Lastly, the opinion consistently presented generally unremarkable findings of relatively normal range of motion in all four extremities, normal sensation, and normal motor strength. (Doc. 9-19 at 17, 21, 155, 162.)

The ALJ found this opinion unpersuasive for many of the same reasons she found Nurse Schlesinger's opinion unpersuasive. First, the ALJ found Dr. Grado's opinion to

consist of a checkbox form with minimal explanation. (Doc. 9-3 at 28.) The ALJ also concluded that Dr. Grado's opinion was unpersuasive as it appeared to be based on Plaintiff's subjective complaints. (*Id.*; Doc. 9-19 at 145.) The ALJ finally concluded that Dr. Grado's opinion was inconsistent not only with his recommendations but also the greater record. (Doc. 9-3 at 28.) This conclusion is supported by several portions of Dr. Grado's opinion where he opines as to Plaintiff's normal range of motion, sensation, and motor strength. (Doc. 9-9 at 85.) However, the ALJ found these largely unremarkable findings to be inconsistent with Dr. Grado's recommended limitations. (Doc. 9-3 at 28.) The ALJ reasonably interpreted Dr. Grado's opinion as to his recommendations for Plaintiff's limitations to be inconsistent with the greater record. Given the problems with Dr. Grado's opinion and the record as a whole, the ALJ's decision to assign limited weight to this opinion was supported by substantial evidence.

Third, Dr. Halepota also provided an opinion pertaining to Plaintiff's limitations. (Doc. 9-20 at 130–133.) He indicated that Plaintiff was cancer-free but had symptoms of cognitive decline, memory loss, and severe generalized myalgias and arthralgias secondary to her cancer therapy. (*Id.* at 134.) He believed these symptoms would frequently interfere with Plaintiff's ability to concentrate, but that she would be capable of low-stress jobs. (Doc. 9-21 at 3.) Lastly, he asserted that Plaintiff can frequently lift ten pounds and occasionally lift twenty pounds. (*Id.* at 4.)

The ALJ also found Dr. Halepota's opinion unpersuasive. (Doc. 9-3 at 27.) The ALJ deemed Dr. Halepota's opinion inconsistent with other physical examinations on the record which showed that Plaintiff had normal strength in the lower and upper extremities, normal gait, and no distress. (*Id.* at 25–26.) Moreover, the ALJ noted that the opinion failed to indicate what level of cognitive decline Plaintiff had suffered and found the statements on the topic to be vague and imprecise. (*Id.* at 27.) Accordingly, substantial evidence supports the ALJ's decision to find Dr. Halepota's opinion unpersuasive.

In summary, the ALJ's findings are supported by substantial evidence. The ALJ did not commit error.

**III.   CONCLUSION**

For the reasons discussed above,

**IT IS ORDERED** affirming the June 14, 2021 decision of the ALJ, as upheld by the Appeals Council.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgement consistent with this Order and close this case.

Dated this 15th day of February, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge